UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:09-CV-90-RLV-DSC

| | |
|---|---|
| **SOUTHERN FARM SUPPLY INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Memorandum and Order** |
| ) | |
| **ARCTIC CAT SALES INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant Arctic Cat Sales Inc.'s ("Arctic Cat") Motion to Transfer Venue (Dkt. 9) filed August 7, 2009 and Memorandum in Support (Dkt. 10) filed August 7, 2009; Plaintiff Southern Farm Supply, Inc's ("Southern Farm Supply") Response in Opposition (Dkt. 14), filed August 24, 2009; and Defendant's reply (Dkt. 18), filed September 8, 2009.

## BACKGROUND

The case arises out of a dealer agreement between Arctic Cat and Southern Farm Supply. (Dkt. 1-3, Ex. C, ¶ 3). The dealer agreement was entered into in June of 2007. It designated Southern Farm Supply as an authorized dealer of Arctic Cat's products. (Dkt. 1-3, Ex. A, ¶ 1, 6). The dealer agreement included a forum selection clause that designated Minnesota State and Federal Courts as the venue for any dispute arising under the dealer agreement. (Dkt. 1, Ex. C, ¶ 28, 15).

1

Plaintiff filed the original complaint against Arctic Cat in the General Court of Justice of the State of North Carolina, County of Iredell. (Dkt. 1, Ex. A. 2). Arctic Cat later removed the case to the Western District pursuant to 28 U.S.C. §1441. (Dkt. 1, 1).

Plaintiff's first cause of action claims that Plaintiff terminated the dealer agreement in accordance with Paragraph 15 (Dkt. 1, Ex. A, ¶ 15, 15) of the dealer agreement between the two parties, and in accordance with Chapter 66, Article 26 of the North Carolina General Statutes. (Dkt. 1, Ex. C, ¶ 4, 2). Plaintiff claims that upon termination it demanded that Arctic Cat repurchase certain goods in compliance with N.C. Gen. Stat. § 66-180 et. seq., and that Arctic Cat has failed to do so. (Dkt. 1, Ex. C, ¶ 5-10, 2-3).

In the second cause of action Plaintiff asks for additional relief pursuant to N.C. Gen. Stat. § 75-16. (Dkt. 1, Ex. C, ¶ 14, 4). Pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure Plaintiff voluntarily dismissed the second cause of action on September 9, 2009. (Dkt. 19, 1).

Defendant now brings this motion to Transfer Venue to the District of Minnesota in accordance with the forum selection clause found in the dealer agreement and pursuant to 28 U.S.C. § 1404(a). (Dkt. 9, 1).

## FACTS

Defendant, Arctic Cat, is a Minnesota corporation with headquarters in Minneapolis, Minnesota and with a North Carolina registered office in Wake County, North Carolina. (Dkt. 14, 1). Plaintiff, Southern Farm Supply is a North Carolina corporation with its principal place of business in Iredell County, North Carolina. (Id.)

The initial activities leading to the supplier/dealer relationship between Arctic Cat and Southern Farm Supply began in February of 2004 when Southern Farm Supply completed a

financing application in order to purchase equipment from Arctic Cat. (Dkt. 13, ¶ 3, 1). On March 27, 2004 Danny Ritter, a district sales manager for Arctic Cat, visited Southern Farm Supply on its customer appreciation day at its principal place of business located at 2335 W. Memorial Highway, Union Grove, North Carolina 28689. (Dkt. 13, ¶ 4, 3). Mr. Ritter erected an Arctic Cat products display on the premises of Southern Farm Supply. This occurred prior to execution of a written dealership agreement between the two parties. (Dkt. 13, ¶ 5, 2). At some point between late March or early April 2004, Southern Farm Supply received a letter dated March 30, 2004, from Arctic Cat welcoming Southern Farm Supply as a dealer of Arctic Cat products. (Dkt. 13, ¶ 6, 2).

On July 6, 2004 Danny Ritter again visited Southern Farm Supply's primary place of business in Union Grove and furnished an initial dealer agreement. Douglas Addis, President of Southern Farm Supply, signed it and dated it on the same date at that location. (Dkt. 13, ¶ 7, 2). Douglas Addis then mailed the signed dealer agreement to Arctic Cat Sales, Inc. which was then returned by mail to Mr. Addis bearing the signature of Arctic Cat's national sales manager. (Dkt. 13, ¶ 8-9, 2). Subsequent dealer agreements renewing the agreement were sent by mail and executed by Mr. Addis, including the current 2007 dealer agreement that is at issue. (Dkt. 13, ¶ 10, 2-3). At no point, under any of the executed dealer agreements, did Mr. Addis discuss or negotiate any of the terms of the dealer agreement. (Dkt. 13, ¶ 11, 3).

## DISCUSSION

### A. Type of Forum Selection Clause

Before analyzing whether to enforce the forum selection clause, this Court must first determine if the forum selction clause within the dealer agreement is mandatory or permissive. A mandatory forum selection clause provides the designated forum with exclusive jurisdiction over

any disputes while a permissive clause provides for jurisdiction at a designated forum, but not necessarily to the exclusion of other possible forums. Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG, 560 F.Supp.2d 432, 435 (W.D.N.C. 2008) (citing S & D Coffee, Inc. v. GEI Autowrappers, 995 F. Supp. 607, 609 (M.D.N.C. 1997). A crucial distinction between a mandatory clause and a permissive clause "is whether the clause only mentions jurisdiction or specifically refers to venue." Scotland Mem'l Hosp., Inc. v. Integrated Informatics, Inc., 2003 WL 151852, at *3-4 (M.D.N.C. Jan. 8, 2003). Generally, a forum selection clause "will not be enforced as a mandatory selection clause without some further language that indicates the parties' intent to make jurisdiction exclusive." Id.

In this case, the forum selection clause states, "[a]ny claim, action, or other dispute between the parties as to the terms of the Agreement...or as to any other matter arising out the parties' relationship, shall be resolved by the State or Federal Courts of the State of Minnesota." (Dkt. 1-3, ¶ 20.8, 20). The language indicates specific intent for exclusive venue in the State of Minnesota, and thus, the Court finds that the forum selection clause in the dealer agreement is mandatory.

**B. Validity of the Forum Selection Clause**

This Court must next determine whether the forum selection clause found within the dealer agreement is valid and enforceable. A forum selection clause is prima facie valid as a matter of law and should be enforced unless the resisting party can establish "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). A forum selection clause may be found unreasonable if:

(1) its formation was induced by fraud or overreaching; (2) the complaining party "will

4

for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) the enforcement of the clause would contravene a strong public policy of the forum state."

Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. App. 1996); see Carnival Cruise Lines v. Shute, 499 U.S. 585, 595 (1991); M/S Bremen, 407 U.S. at 18.

Applying the above factors to the present case, this Court is not persuaded that enforcing the forum selection clause is unreasonable, unjust, or invalid.

First, the forum selection clause was not induced by fraud or overreaching. Plaintiff emphasizes the "boilerplate term of a form contract, with no emphasis directing Plaintiff's attention to it" as evidence of overreaching on the part of the Defendant. (Dkt. 14, 14). A forum selection clause does not overreach simply on account of the relative bargaining position of the parties or the amount of negotiation surrounding the inclusion of the clause. The Supreme Court has enforced a non-negotiable forum selection clause printed on the back of a cruise ship ticket even though the ticket with the forum selection clause was provided to the passenger after the passenger had paid for the ticket. Carnival Cruise Lines, 499 U.S. at 595. In AC Controls, the plaintiff argued that the forum selection clause overreached because the defendant "used its superior bargaining position to insert boilerplate language" into a license agreement. AC Controls Co., Inc. v. Pomeroy Computer Res. Inc., 284 F. Supp. 2d 357, 361 n.4 (W.D.N.C. 2003) (citing Carnival Cruise, 499 U.S. at 593-594). The court rejected that argument, holding that the plaintiff "cannot now avoid a provision of a freely entered contract because it did not consider the provision carefully at the time the Agreement was negotiated." Id. at 361 (quoting Republic Mortg. Ins. Co. v. Brightware, Inc., 35 F. Supp. 2d 482, 484 (M.D.N.C. 1999)). Furthermore, "an inability or failure to negotiate concerning the disputed [forum selection clause] does not establish 'overreaching' by the drafter." Bassett, 2006 WL 156874, at

5

*5 (citing Carnival Cruise, 499 U.S. at 593-594).

Second, the Plaintiff will not "for all practical purposes be deprived of his day in court" because resolving this matter in Minnesota does not create a "grave inconvenience or unfairness" for the plaintiff. (Dkt. 14, 14). Plaintiff argues that transporting witnesses to trial in Minnesota would result in a "severe financial strain" upon the Plaintiff, and alternatively that the potential inability for his witnesses to be personally present at trial to submit testimony to the jury also results in grave inconvenience or unfairness. (Dkt. 14, 9). But having witnesses travel to another state does not constitute a "grave inconvenience" See P.M. Enter. v. Color Works, Inc., 946 F. Supp. 435 (S.D. W. Va. 1996) (holding that irrespective of where the case was tried "one side or the other will be burdened with bringing themselves and their witnesses from far away" (quoting Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1258 (4th Cir. 1991)); see also Baker v. Adidas America, Inc., 335 Fed. Appx. 356 (4th Cir. 2009) (holding that a forum selection clause between a North Carolina tennis player and footwear manufacturer designating venue in Amsterdam was not so inconvenient as to deprive the player of her day in court). As the Defendant correctly points out, "increased costs of litigating in Minnesota are merely [an] inconvenience and were foreseeable to the Plaintiff at the time the contract was signed." (Dkt. 18, 5-6).

Third, Plaintiff offers no argument that some fundamental unfairness of the chosen law may deprive him of a remedy.

Fourth, although enforcing the forum selection clause violates North Carolina public policy, specifically N.C. Gen. Stat. § 22B-3, this factor alone does not outweigh the presumption in favor of finding the clause valid under §1404(a). All three district courts in North Carolina have found that the North Carolina forum selection statute "is not dispositive as to the

6

enforceability of a forum selection clause." Scholl v, Sagon RV Supercenter, LLC, 249 F.R.D. 230, 242 (W.D.N.C. 2008) (citing Blue Mako, Inc. v. Minidis, 472 F. Supp. 2d 690, 704-05 (M.D.N.C. 2007); James C. Greene Co. v. Great Am. E&S Ins. Co., 321 F. Supp. 2d 717, 721-22 (E.D.N.C. 2004); and Dove Air, Inc. v. Bennett, 226 F. Supp. 2d 771, 775-76 (W.D.N.C. 2002)). Where applicable, N.C. Gen. Stat. § 22B-3 is only one factor among several considered in analyzing whether a forum selection clause is valid and whether transfer pursuant to 28 U.S.C. § 1404(a) is appropriate. Scholl, 249 F.R.D. at 242.

**C. Factors Analysis and Enforcement of the Forum Selection Clause**

28 U.S.C. § 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." (2010). In Stewart Org., Inc. v Ricoh Corp., the Supreme Court held that §1404(a) "governs a district court's decision whether to give effect to the parties' forum selection clause." 487 U.S. 22, 32 (1988). Although the presence of a forum selection clause will be a "significant factor that figures centrally in the district court's calculus," its mere presence is not dispositive and the Supreme Court guides district courts to "weigh in the balance a number of case-specific factors." Id. at 29.

In applying the Stewart framework, this Court has enumerated eleven factors it considers when deciding whether to transfer a matter:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;
3. The relative ease of access of proof;
4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
5. The possibility of a view;
6. The enforceability of a judgment, if obtained;
7. The relative advantages and obstacles to a fair trial;
8. Other practical problems that make a trial easy, expeditious, and inexpensive;

7

> 9.  The administrative difficulties of court congestion;
> 10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
> 11. The avoidance of unnecessary problems with conflict of laws.

Scholl, 249 F.R.D. at 239.

Generally, the movant carries a "heavy burden" in establishing that a case should be transferred pursuant to 28 U.S.C. § 1404(a). Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F. Supp. 93, 95 (W.D.N.C. 1991). However, where a party seeks to transfer venue based on a forum selection clause, the burden of proof shifts from the party seeking transfer of venue to the party opposing transfer of venue. Scholl, 249 F.R.D. at 239 (citing Allen, 94 F.3d at 928. Thus, in this case, Plaintiff Southern Farm Supply bears the burden of proof in establishing why the case should not be transferred.

It is important to note that the Supreme Court has acknowledged that "a valid forum selection clause is given controlling weight in all but the most exceptional case." Stewart, 487 U.S. at 33 (Kennedy, J concurring) (citing M/S Bremen, 407 U.S. at 10). The 4th Circuit has ruled that while a valid forum selection clause does not conclusively establish proper venue, it is "a significant factor that figures centrally in the District Court's calculus." Brock v. Entre Comp. Ctrs., Inc., 933 F.2d 1253, 1258 (4th Cir. 1991). A forum selection clause may be dispositive if no other factors act to tip the balance in favor of non-enforcement. Id.

As to the first factor, the Plaintiff argues that his choice of forum is North Carolina because Plaintiff initially brought the claim in a North Carolina State Court. Plaintiff correctly states that "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed." (Dkt. 14, 8) (quoting Datasouth Conputer Corp. V. Three Dimensional Technologies Inc., 719 F. Supp.

8

446, 451 (W.D.N.C. 1989). However, Plaintiff has failed to accord proper weight to the valid and enforceable forum selection clause. "When a forum-selection clause is part of the balancing, as Stewart requires, it is more logical to consider the plaintiff's initial choice of forum to be the forum that is contractually agreed upon." AC Controls, 284 F. Supp. 2d at 363 (W.D.N.C. 2003) (quoting Republic Mortg., 35 F. Supp. 2d at 486). A valid forum selection clause "eliminates the deference ordinarily afforded to the plaintiff's choice of forum." Cable-La, Inc. v. Williams Communications, Inc., 104 F. Supp. 2d 569, 577 (M.D.N.C. 1999). Accordingly, this factor favors the Defendant's motion because the parties freely contracted to resolve all disputes in the State or Federal Courts of Minnesota.

As to the second factor, Plaintiff fails to make a showing as to why this factor should weigh in his favor. The test is straight forward and the result favors neither party. Southern Farm Supply is a North Carolina Corporation and Arctic Cat is a Minnesota Corporation. (Dkt. 14, 1).

As to the third factor, both parties agree that the factor does not weigh in favor of either party. (Dkt. 18, 15) (Dkt. 14, 9).

As to the fourth factor, Plaintiff correctly argues that this factor falls in its favor. The arguments of both parties resemble those previously made concerning the analysis of the validity and enforceability of the forum selection clause and particularly whether the plaintiff will be deprived of "his day in court" due to grave inconvenience or unfairness. (Dkt. 14, 10) (Dkt 18, 15). However, the test here is different. Under this factor, the test is simply the "availability of compulsory process for attendance of witnesses." Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F. Supp. 93, 95 (W.D.N.C. 1991). In regard to this factor, the court is not concerned with whether this factor results in grave inconvenience or unfairness. The court is only concerned with the availability of compulsory process for attendance, and on the face of it

Plaintiff has made a clear showing that a number of the witnesses it intends to use are outside the subpoeana power of the District of Minnesota under Fed. R. Civ. P. 45(c)(3)(A)(ii).[1] (Dkt. 14, 9).

The fifth and sixth factors do not weigh in the balance because the Court foresees no likelihood that a view of premises would be necessary for the impending proceedings and no reason why a judgment, if obtained, would pose enforcement difficulties.

As to the seventh factor, the Plaintiff voices legitimate concern regarding the ability of the jury to receive the testimony of witnesses firsthand. (Dkt. 14, 7). However, the Court's analysis must turn on the relative advantages to be gained and obstacles to be overcome to produce a fair trial. Plaintiff is correct in citing the *potential* lack of personal testimony by witnesses to the jury. However, given the availability of video depositions and the like this Court is not persuaded that this factor actually places the fairness of the trial in question. Moreover, Plaintiff fails to consider the inverse proposition. If the trial remains in the Western District, Arctic Cat will suffer from this same *potential* obstacle. Accordingly, this factor is neutral and favors neither party.

As to the eighth factor, this Court does agree with the Plaintiff that Arctic Cat, as a major corporation, is likely better suited to withstand the burdens of litigation in a state other than that where it is incorporated. However, practical problems in federal litigation are a reality and it is impossible to strike a perfect balance between the parties in terms of relative ease, speed, and costs of litigation. Plaintiff's argument might have been more compelling had he produced actual figures and estimates demonstrating the "devastating financial impact" that will be suffered.

---

[1] Plaintiff cites Fed. R. Civ. P. 45(e), however under the 2010 version of the FRCP the actual rule Plaintiff is citing is Rule 45(c)(3)(A)(ii). It would seem that Plaintiff is referring to a pre-1991 version of the FRCP, where Rule 45(e) does contain pertinent language.

(Dkt. 14, 11). Instead the Plaintiff only leaves the court with a string of hypotheticals and one conclusory sentence in support of its position. (Dkt. 14, 11). It must be remembered that the instant case arises in contract and is not notably complex. Under these circumstances the factor does not weigh heavily either way.

As to the ninth factor, both Plaintiff and Defendant submit valid arguments for why this factor should fall in favor of their respective positions. In the Plaintiff's favor, the District of Minnesota has 775 pending civil cases while the Western District of North Carolina only has 265. (Dkt. 14, 11).[2] In the Defendant's favor, the District of Minnesota boasts a median time to disposition of civil cases of 3 years while the Western District of North Carolina has a median time of 7.6 years. (Dkt. 18, 15). This Court recognizes the potential advantages and disadvantages of each district. This factor weighs mildly in favor of the Plaintiff.

As to the tenth and eleventh factors, Defendant's argument is well reasoned. The Court's previous finding of validity and enforceability of the forum selection clause turns these factors in favor of the Defendant. (Dkt. 18, 16-17).

Here, the Plaintiff has not met his 'heavy burden of proof" demonstrating an exceptional circumstance that would warrant non-enforcement of the forum selection clause. See Carnival Cruise Lines, 499 U.S. at 595.  Plaintiff's primary argument rests upon this Court finding the forum selection clause invalid and unenforceable which, for the reasons enumerated above, it declines to do. Plaintiff's remaining argument for not enforcing the chosen forum comes down to a general notion that it will suffer increased burdens, both financially and procedurally, if

---

[2] Judicial caseload per judgeship statistics as of 12-31-2010 show the District of Minnesota relative to the Western District of North Carolina as follows: civil filings 721 to 228; criminal felony 40 to 75; weighted filings 701 to 361; trials completed 12 to 25; median times (in months) to disposition: civil 3.9 to 7.3; criminal felony 9.2 to 13.6. Federal Court Management Statistics, 2010, District Courts, http://www.uscourts.gov/cgi-bin/cmsd2010Dec.pl/cmsd2010Dec.pl (Minnesota and NO. Carolina Western).

required to litigate this suit in the State or Federal Courts Minnesota. However, in cases lying in freely entered into contracts such as this one, the notion of fairness proceeds from the fact that each party assumed burdens and acquired advantages that it perceived as balanced at the outset. Nothing has been brought forth here to upset that balance.

Because these factors fail to tip the balance of factors in favor of non-enforcement of the clause the Plaintiff has not met its burden and the forum selection clause should be enforced.

## **ORDER**

Because the forum selection clause within the dealer agreement is valid and mandatory, and because the Plaintiff has not met its burden of demonstrating exceptional circumstances warranting non-enforcement of the clause, the forum selection clause within the dealer agreement should be enforced.

**WHEREFORE**, for the foregoing reasons, Defendant's Motion to Transfer Venue is **GRANTED.** Accordingly, the Clerk is directed to **TRANSFER** this civil action to the District of Minnesota consistent with the terms of this Memorandum and Order.

Signed: July 14, 2011

Richard L. Voorhees
United States District Judge